JUSTICE WHEAT
delivered the Opinion of the Court.
¶1 Employee Benefit Management Services, Inc. (EBMS) and Joint Powers Trust (JPT) appeal from the order of the Montana First Judicial District Court, Lewis and Clark County, granting Kent D. Roose’s (Roose) motion for class certification and declaratory judgment. We affirm.
PROCEDURAL AND FACTUAL HISTORY
¶2 On October 3,2007, Roose was severely injured in an automobile crash on Highway 93. The driver of the other vehicle, Steams, whose negligence is undisputed, was killed in the accident. Steams’ liability insurance carrier tendered the limit of its liability coverage, and his estate also paid funds to Roose; however, these payments fell short of covering the more than $320,000 in medical expenses incurred by Roose for treatment at Kalispell Regional Hospital (the Hospital) after his injury.
¶3 At the time of the crash, Roose’s wife was an employee of Lincoln *411 County. The County provided health benefits via a group health plan (the Plan) that was part of JPT, a pool of local government health plans. The JPT plans were administered by EBMS, which acted primarily as a third-party administrator, and which administers other local government plans in Montana.
¶4 The Plan contained an exclusion stating that medical benefits would not be paid when any automobile or third-party liability insurance was available to pay medical costs. Appellants informed Roose, the Hospital, and Stearns’ liability insurer of the exclusion.
¶5 The Hospital subsequently asserted a medical lien for $40,000. Stearns’ insurer tendered its $100,000 liability limit to Roose in the form of a check made out to both Roose and the Hospital. The Hospital refused to sign the check or release its lien until Roose agreed to pay the Hospital $40,000 of the $100,000 payment, which Roose did.
¶6 Roose contacted EBMS and objected to the fact that the $40,000 hospital charge was paid out of the liability insurance funds, rather than from the Plan. He requested reimbursement for the $40,000 he paid to the Hospital out of the liability insurance payment he received. EBMS denied his request. In a letter dated August 6, 2009, EBMS rejected all allegations of wrongdoing.
¶7 In October 2009, Roose brought suit against EBMS, JPT, and Lincoln County, though the County was later dismissed as a party, requesting declaratory and iiyunctive relief, and class action certification. In 2013, we published our opinion in Diaz v. State (Diaz III), 2013 MT 331, 372 Mont. 393, 313 P.3d 124, wherein we held that exclusions such as the one contained in the Plan violated § 2-18-902(4), MCA, Montana’s made-whole law. Following the publication of Diaz III, Appellants reimbursed Roose the $40,000 paid to the Hospital.
¶8 On April 4, 2014, Roose filed a motion for partial summary judgment and class certification. Roose argued that Appellants violated § 2-18-902(4), MCA, through systematic practices that amounted to seeking subrogation against Steams’ liability carrier before Roose was made whole. Roose also requested class certification on behalf of every member of Appellants’ plans subject to Montana law that contained the coverage exclusion. Roose requested a declaratory judgment that both the exclusion and Appellants’ systematic practices violate Montana’s made-whole laws. He also sought an injunction requiring Appellants to cease all illegal practices. Finally, Roose, as an individual, requested a trial seeking actual and punitive damages for bad faith.
¶9 On September 22,2014, the District Court issued its order on the motion for summary judgment and class certification. The court found that certification was appropriate for an equitable relief class under M. *412 R. Civ. P. 23(b)(2) and authorized a notice to be sent to potential class members to determine the viability of the class and to gauge the necessity of certifying a restitution subclass. The court granted a declaratory judgment stating that JPT, as an insurer governed by Title 2, MCA, was required to comply with Montana’s made-whole laws. Thus, JPT was required to provide coverage for medical expenses regardless of the availability of third-party liability coverage. Once the insured was made whole, JPT could seek reimbursement from the liability carrier. The court ordered Appellants to remove the illegal exclusion from their plans and to cease systematic practices that violated the made-whole laws. The court also ordered Appellants to process all claims incurred in the past without the application of the illegal exclusion. The court ruled on Roose’s bad faith claim in a different order and granted his motion for a jury trial on that issue. ¶10 Appellants timely appealed the District Court’s order regarding class certification.
STANDARD OF REVIEW
¶11 We review a district court’s decision on a motion for class certification for an abuse of discretion. Chipman v. Northwest Healthcare Corp., 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193. The abuse of discretion question is “not whether this Court would have reached the same decision, but whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason.” Rolan v. New West Health Servs., 2013 MT 220, ¶ 13, 371 Mont. 228, 307 P.3d 291; Chipman, ¶ 17 (quoting Newman v. Lichfield, 2012 MT 47, ¶ 22, 364 Mont. 243, 272 P.3d 625). The district court’s judgment on certification should be accorded the greatest respect because it is in the best position to consider the most fair and efficient procedure for conducting any given litigation. Chipman, ¶ 17. Further, “[tjrial courts have the broadest discretion when deciding whether to certify a class.” Sieglock v. Burlington Northern & Santa Fe Ry. Co., 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495 (citing McDonald v. Washington, 261 Mont. 392, 399, 862 P.2d 1150, 1154 (1993)).
DISCUSSION
¶12 Appellants present two issues for review:

1. Did the District Court abuse its discretion when it certified the proposed class under Rule 23 of the Montana Rules of Civil Procedure?

2. If the class was properly certified, did the District Court abuse its discretion by defining the class over-broadly?

*413 We will address each issue in turn.
¶13 1. Did the District Court abuse its discretion when it certified the proposed class under Rule 23 of the Montana Rules of Civil Procedure?
¶14 A class action is “an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.” Mattson v. Mont. Power Co. (Mattson III), 2012 MT 318, ¶ 18, 368 Mont. 1, 291 P.3d 1209 (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557 (1979)). A class action allows the representative party to conserve the judiciary’s and the similarly-situated parties’ resources by permitting the single litigation of common issues of fact and law. Morrow v. Monfric, Inc., 2015 MT 194, ¶ 8, 380 Mont. 58, 354 P.3d 558 (citations omitted). Class actions are governed by Rule 23 of the Montana Rules of Civil Procedure. In order for a class action to proceed it must first meet the four requirements of Rule 23(a). Morrow, ¶ 8. However, the class action proponent need not prove each element with absolute certainty. Once Rule 23(a) is satisfied a district court must then determine whether the class action conforms to the type of class actions available pursuant to Rule 23(b). Diaz v. Blue Cross & Blue Shield (Diaz I), 2011 MT 322, ¶ 27, 363 Mont. 151, 267 P.3d 756. Rule 23 provides a district court with flexible management tools to adjust the certified class as the case proceeds. In Rolan v. New West Health Servs., we declined to override the district court’s determination as to the breadth of the class definition where the court included insureds who had never filed claims. Rolan, ¶¶ 23, 26. Further, we stated:
[C]lass action certification orders “are not frozen once made”; instead, the District Court maintains discretion to alter the class definition as the case proceeds. Amgen Inc. v. Conn. Ret. Plans & Trust Funds,_U.S._, 133 S. Ct. 1184, 1202 n. 9, [185 L.Ed.2d 308] (2013) (“Rule 23 empowers district courts to ‘alter or amend’ class-certification orders based on the circumstances developing as the case unfolds.”) (citing F. R. Civ. P. 23(c)(1) and 23(c)(1)(C)); see Howe v. Townsend, 588 F.3d 24, 39 (1st Cir. 2009) (“Courts can amend certification orders to reflect major changes or minor adjustments to the class.”) (citing F. R. Civ. P. 23(c)(1)(C)).
Rolan, ¶ 15.
¶15 Appellants argue Roose failed to demonstrate the class numerosity requirement under Rule 23(a)(1) and failed to demonstrate the class commonality and typicality requirements under Rule 23(a)(2)-(3). Further, Appellants argue because Roose’s claims are not common and typical to the class, he is an inadequate representative under Rule 23(a)(4). Each argument is addressed in turn below.
*414 A, Rule 23
¶16 M. R. Civ. P. 23, “Class Actions,” states in part:
(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.
The requirements listed in sections 23(a)(l)-(4) are often referred to, respectively, as Numerosity, Commonality, Typicality, and Adequacy of Representation. Diaz I, ¶ 27; Sieglock, ¶ 10; Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S. Ct. 2541, 2550 (2011). The party seeking class certification has the burden of showing that the proposed class meets all four requirements. Morrow, ¶ 8; Diaz I, ¶ 27.
¶17 Once Rule 23(a)’s requirements are satisfied, then the court must determine the type of class action that is appropriate under Rule 23(b). Rule 23(b)(2) states the party in opposition to the class must have “acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.” M. R. Civ. P. 23(b)(2). A Rule 23(b)(2) class is considered a mandatory class. Unlike a damage class under Rule 23(b)(3), wherein the class members can opt out, 23(b)(2) class members generally cannot opt out. William B. Rubenstein, Newberg on Class Actions, § 4:1 (5th ed. Supp. 2015). Thus, relief awarded to a Rule 23(b)(2) class applies to all class members regardless of whether they are knowledgeable of the litigation and regardless of whether all have suffered the precise injury that was suffered by the representative party. Newberg on Class Actions, § 4:28.
1. Rule 23(a)(1) — Numerosity
¶18 While Rule 23(a)(1) is often referred to as the “Numerosity” requirement, at its heart is that joinder is impracticable. Morrow, ¶ 10; Newberg on Class Actions, § 3:11. “Numerousness — the presence of many class members — provides an obvious situation in which joinder may be impracticable, but it is not the only such situation; thus Rule 23(a)(l)’s analysis may, in specific circumstances, focus on other factors as well.” Newberg on Class Actions, § 3:11 (emphasis added). The nonnumeric factors courts have looked to include judicial economy, geographic distribution of putative class members, the size of the *415 members’ individual claims, and the ability to initiate individual lawsuits, amongst others, when determining whether joinder is impracticable and certification is appropriate. Morrow, ¶ 12; Vasquez v. Coast Valley Roofing, Inc., 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009); Newberg on Class Actions, § 3:12. The consideration of factors such as these is within the broad discretion of the district corat. Jacobsen v. Allstate Ins. Co., 2013 MT 244, ¶ 25, 371 Mont. 393, 310 P.3d 452.
¶19 Appellants argue that the Rule 23(a)(1) element has not been satisfied because Roose “is in essence in a class by himself.” Appellants state that, in a search of their records, Roose was the only person they found to have had his made-whole rights violated by having liability payments applied to medical coverage when submitting claims to EBMS. Appellants correctly point out that Roose must meet all of Rule 23(a)’s requirements and the failure of one is fatal to certification. Morrow, ¶ 8. Because no other class members were discovered Appellants contend that the class certification must fail because the Numerosity requirement cannot be met.[1]
¶20 The District Court considered Appellants’ argument but determined that sufficient potential class members existed to meet the Numerosity requirement. Explaining its rationale, the court stated:
Roose, however, has provided a compelling basis for believing that most persons whose rights were infringed upon never filed claims and, therefore, would not show up in [Appellants’] computers despite the accuracy of the search. The reasons why an insured would not have filed claims include the fact that [Appellants] informed both insureds and medical providers that no coverage existed if liability insurance was available. The evidence demonstrated, for instance, that EBMS informed the hospital taking care of Roose that based on the exclusion, liability insurance had to be exhausted before health insurance would pay anything. EBMS’s claims manual stated that if insureds or medical providers inquire, the customer service representatives should inform them that liability insurance has to be exhausted first. Thus, the medical providers would direct their claims to the liability insurer for payment, and [Appellants] would not process the health insurance claims. Since [Appellants’] systematic procedures created a situation where their insureds would not file *416 claims, it would neither be realistic nor equitable to conclude that no insureds are entitled to restitution. All person[s] in [Appellants’] plans which are subject to Montana law are entitled to know that an unlawful exclusion has been taken out of their policy.
¶21 Based on the evidence presented to the District Court it determined parties other than Roose exist whose interests are directly affected by the outcome of this litigation. The District Court, in the best position to consider the evidence before it, looked to factors other than sheer numbers alone to determine joinder of all interested parties is impracticable at this stage in the litigation. In its evaluation of the evidence the District Court determined individuals other than Roose are certain to be found. Because the District Court was in the best position to judge it highly likely that other additional insureds, under the circumstances specific to the case, may have had their made-whole rights violated under the policy’s exception, and it properly considered factors relating to Rule 23(a)(1), the District Court did not clearly abuse its discretion — based on the facts as presently developed. Further, as is related to the type of class action that was certified, which is discussed below, all insureds subject to the unlawful exclusion at issue have a right to equitable and injunctive relief and mandatorily become members of such a class. Finally, as certification orders are not set in stone, should no other affected insureds be discovered to sufficiently satisfy Rule 23(a)(1), the District Court is able to decertify the class for failure to meet all of the requirements under Rule 23(a), which is precisely what the District Court indicated it would evaluate upon motion from EBMS and JPT.
¶22 The Dissent cites Smith v. Transworld Sys. Inc., 953 F.2d 1025 (6th Cir. 1992), to support the contention that mere conclusory allegations as to claims of numerosity are insufficient to establish compliance with Rule 23(a)(1). Dissent, ¶ 45. While the Dissent’s proposition is essentially correct, Smithis readily distinguishable from the present action. In Smith a third party inadvertently sent the plaintiff to the defendant collection agency over the payment of a debt incurred by the plaintiff, despite that the plaintiff had previously paid the debt to the third party. Smith, 953 F.2d at 1026. Through a series of correspondence the defendant attempted to collect payment of the debt from the plaintiff. Smith, 953 F.2d at 1026-1027. The plaintiff ultimately brought suit against the defendant alleging the violation of various state and federal consumer protection laws, and later sought class action certification based on the boilerplate language used in the defendant’s correspondence. Smith, 953 F.2d at 1027, 1033. The *417 defendant responded by claiming the defense of bona fide error. Smith, 953 F.2d at 1027.
¶23 Here, unlike Smith, the Appellants have conceded that the exclusion contained in the policy is illegal. In contrast, the defendant in Smith claimed a bona fide error occurred that excused its conduct in violation of the laws at issue. Thus in this case, and not in Smith, the Appellants, by their own admission, “acted or refused to act on grounds that apply generally to [a] class [.]” M. R. Civ. P. 23(b)(2). Therefore, in this case and unlike in Smith, evidence of numerosity is not based on mere conclusory allegations made by the defendant; instead Appellants themselves have admitted to illegal conduct that affects every single policyholder whose policy contained the illegal exclusion — policyholders who certainly exist but are impracticable to join at this stage in the litigation.
¶24 We find the District Court’s reasoning reasonable and designed to facilitate a fair and efficient resolution of the matter. Accordingly, we will not reverse the court’s finding that the requirement of M. R. Civ. P. 23 (a)(1) was met.
2. Rule 23(a) (2)-(4) — Commonality, Typicality, and Adequate Representation
¶25 Commonality under Rule 23(a)(2) means that there must be “questions of law or fact common to the class” and Typicality under Rule 23(a)(3) means the representative party’s claims or defenses must be “typical of the claims or defenses of the class.” M. R. Civ. P. 23(a)(2)-(3). Further, Rule 23(a)(4) states the parties representing the putative class must “fairly and adequately protect the interests of the class.” M. R. Civ. P. 23(a)(4).
¶26 EBMS and JPT also challenge the District Court’s holding that the requirements of Rule 23(a)(2)-(4), Commonality, Typicality, and Adequacy of Representation, were met. The thrust of Appellants’ argument is that Roose’s individual bad faith claim conflicts with the purposes of the class and destroys Commonality and Typicality. Further, Appellants state because of his bad faith claim it puts Roose in a unique situation, thus making him an inappropriate representative for such a class.
¶27 EBMS and JPT first point out, correctly, that the District Court certified the class under M. R. Civ. P. 23 (b)(2). That rule states:
(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive *418 relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]
Thus, they argue that Roose’s claim seeks individualized money damages and therefore falls outside the scope of Rule 23(b)(2).
¶28 Their argument is rooted in the U.S. Supreme Court’s decision in Wal-Mart Stores, Inc. v. Dukes. There, the U.S. Supreme Court held that class certification under federal Rule 23(b)(2) is inappropriate where “monetary relief is not incidental to the [requested] injunctive or declaratory relief.” Wal-Mart, 131 S. Ct. at 2557. Therefore, EBMS and JPT posit that, because the declaratory and injunctive relief ordered by the District Court could result in individual payments of benefits to class members, the class should not be certified under M. R. Civ. P. 23(b)(2).
¶29 Roose responds by pointing out that we have recognized the WalMart limitation as applying to cases “when each class member would be entitled to an individualized award of monetary damages, or when each class member would be entitled to a different injunction or declaratory judgment against the defendant.” Diaz I, ¶ 42 (emphasis in original). In the case of Diaz, as in this case, the declaratory and injunctive relief granted was uniform. Both courts simply declared the insurers’ exclusions illegal and required the insurers to cease violating Montana’s made-whole laws and restore benefits to their insureds. Roose acknowledges that the class as-certified is entitled to prospective relief only. The District Court has not certified a class for the purposes of restitution. Any monetary relief granted to individual class members as a result of these rulings would occur outside the scope of the class action and would be incidental to the declaratory and injunctive relief ordered by the district courts. Diaz I, ¶ 48. Applying our holding in Diaz I to this case, we conclude that the Wal-Mart limitation does not prohibit certification under M. R. Civ. P. 23(b)(2).
¶30 Regarding EBMS’ and JPT’s contention that Roose’s individual claim for bad faith damages creates a conflict that destroys Commonality and Typicality, the District Court considered Appellants’ argument and determined that nothing in the bad faith claim implicated issues in the class action. Such a finding is within the discretion of the District Court and we see no evidence that the court abused its discretion in so ruling. Furthermore, because the District Court certified the class under Rule 23(b)(2) as a class seeking to enjoin the Plan’s exclusion at issue and like exclusions, all class members need not have suffered Roose’s precise injury. At this stage in the litigation the bad faith claim Roose advances against Appellants for the ways in which Appellants may have acted while processing Roose’s *419 insurance may exist separate and apart from the issue of whether the exclusion itself should be enjoined.
¶31 Finally, regarding Appellants’ adequacy of representation claim, the District Court stated no objection as to class counsel was made by Appellants, and for the reasons set forth above we are not persuaded Roose’s individual claims of bad faith make him an inappropriate representative to advance the interests of the as-certified Rule 23(b)(2) class.
¶32 We conclude that the District Court did not abuse its discretion in finding that the Rule 23(a) criteria were met and certifying the class under Rule 23(b)(2).
3. Rule 23(c) — Notice
¶33 The essence of the certification notice provision of Rule 23 is to protect the due process rights of all class members, specifically those who are absent. Newberg on Class Actions, § 1:15. For Rule 23(b)(2) mandatory classes certification notice is discretionary; whereas notice is required for Rule 23(b)(3) damage classes. M. R. Civ. P. 23(c)(2). The rationale behind discretionary certification notice in mandatory class actions is that members may not generally opt out of class participation; thus, requiring certification notice would serve little valuable function and cause the parties to sink unnecessary and potentially unsupportable costs into the early stages of the litigation, Newberg on Class Actions, § 8:3.
¶34 Appellants argue notice in this case was improper. They state the District Court used the Rule 23(c) notice provision as a method to satisfy the Numerosity requirement because at present Roose is the only known class member. However, as determined by the District Court based on the evidence it reviewed and as outlined above, the Rule 23(a)(1) requirement was properly satisfied at this stage in the litigation. Rule 23 in its entirety provides management tools for a court to control litigation in the best and most efficient manner possible. Jacobsen, ¶ 25; Chipman, ¶ 17. Here, as permitted under the Rule, the District Court used its discretion to determine — under the facts as presently developed — notice to absent class members is appropriate. ¶35 Appellants argue, and the Dissent agrees, that class relief was not appropriate because Appellants were already in the process of correcting the policies to remove the illegal exclusion. Dissent, ¶¶ 51-52. In fact, it is the acknowledged unlawful conduct itself that makes potential relief appropriate in this case. Class certification should not be denied when to do so would prevent policyholders — Rule 23(b)(2) mandatory class members — from learning of the illegal exclusion, its removal, and its effect on their made-whole rights. The District Court *420 properly acknowledged that, despite Appellants’ removal of the illegal exclusion, all policyholders are entitled to notice of its removal. Therefore, under Rule 23(b)(2), “final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]” M. R. Civ. P. 23 (b)(2). The court recognized its obligation to administer additional proper relief, should relief be appropriate in this case.
¶36 The District Court did not merely seek to use the notice provision to discover more class members. Instead, the District Court determined that the case and evidence at present show more class members do exist and are certain to be found. Accordingly, we will not disturb the District Court’s decision to use the notice provision as a tool to manage the litigation process.
¶37 2. If the class was properly certified, did the District Court abuse its discretion by defining the class over-broadly?
¶38 EBMS and JPT argue that the District Court abused its discretion by defining the class too broadly. According to EBMS and JPT, the class definition could create liability for non-parties to the lawsuit and would include claimants who are members of plans that no longer do business with EBMS and JPT and, therefore, would never receive payments.
¶39 In its order granting class certification, the District Court defined the class as follows:
1) All persons insured through EBMS-administered plans (including JPT plans) dating back eight years before Mr. Roose filed the suit (i.e., statute of limitations for contracts);
2) who, similar to Mr. Roose, have been enrolled in plans containing exclusions which require payment of medical bills by liability carriers before the EBMS plan is required to pay or result in reimbursement of the plan when both the plan and the liability carrier have paid;
3) who, similar to Mr. Roose, are subject to various systematic practices which implement the subject exclusions; and
4) excluding plans not subject to Montana law.
¶40 We do not see evidence of the dire consequences predicted by Appellants based on this definition. The definition appropriately narrows the class to individuals enrolled in plans administered by Appellant EBMS that contained the unlawful exclusion. Roose has stipulated that the District Court cannot order EBMS to provide restitution to non-JPT plan members. Because the declaratory judgment was issued against JPT, and the court granted only prospective injunctive relief, the class is limited to plans that are still part of JPT. Furthermore, the District Court considered Appellants’ *421 argument and stated:
“The Court is also appreciative of [EBMS’ and JPT’s] concern that granting the Plaintiffs request will unfairly involve plan owners, such as Lincoln County, with whom the Plaintiff has no connection. While this is true, the Court has no intention of affecting the rights of defendants not in this case. However, EBMS and JPT are Defendants in this case. This Court can make decisions concerning their conduct and this Order intends to do nothing more than that.”
¶41 Nothing in the record demonstrates that the District Court abused its discretion by defining the class as it did.
CONCLUSION
¶42 We conclude that the District Court did not abuse its discretion by certifying the class or by defining the class over-broadly. Accordingly, the judgment of the District Court is affirmed.
JUSTICES SHEA, BAKER and RICE concur.

 Review of the record indicates one other person other than Roose was actually discovered in EBMS’s computer search of similarly situated individuals.